IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRIUS BELL, #149 992,             )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   CIVIL ACTION NO. 2:11-CV-488-WHA
                                    )            [WO]
ERIC HOLDER, JR., *et al.*,         )
                                    )
        Defendants.                 )


**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff is currently incarcerated in the Bullock Correctional Facility in Union

Springs, Alabama.  He brings this *pro se* civil action for damages and declaratory and

injunctive relief against United States Attorney General Eric Holder, Jr., former Governor

Bob Riley, former Attorney General Troy King, former Commissioner Richard Allen, former

Director of Public Safety Christopher Murphey, and Warden Rene Mason.[1]  Plaintiff sues

Defendants in their official and individual capacities. The complaint is brought under the

provisions of 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403

U.S. 388 (1971).[2]  Upon review of the complaint, the court concludes that dismissal of

---

[1] In accordance with the prior orders of the court (*see Doc. Nos. 4, 6*), the captioned action is proceeding on the amended complaints filed by Plaintiff on July 28, 2011 and October 4, 2011 which supersede the original complaint filed on June 22, 2011.  (*Doc. Nos. 5, 11.*)

[2] Federal courts have analogized *Bivens* claims to claims filed under 42 U.S.C. § 1983, which require a showing that defendants acted under color of state law to deprive an individual of his or her constitutional rights. *See Butz v. Economou*, 438 U.S. 478, 498-99 (1978). A claim under *Bivens* must allege facts showing that Defendant(s) acted under color of federal law to deprive Plaintiff of a constitutional right. *Bivens*, 403 U.S. at 388.

Plaintiff's complaint prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B).[3]

## I. THE COMPLAINT

Plaintiff alleges in his complaint that he was a successful parolee who was returned to prison due to his inability to find a home within 72 hours in accordance with Alabama's verison of the Sex Offender Registration and Notification Act ["SORNA"],[4] 42 U.S.C. § 16901, *et seq*, *i.e.*, the Alabama Community Notification Act ["ACNA"].[5] For purposes of clarification with regard to this assertion, however, the court notes that the documents submitted in support of Plaintiff's amended complaint reflect that Plaintiff was returned to

---

[3]A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

[4]"SORNA was enacted in July 2006 'to protect the public from sex offenders and offenders against children ...' by establishing 'a comprehensive national system for the registration of those offenders.' 42 U.S.C. § 16901. Indeed, the statute was designed 'to track the interstate movement of sex offenders.'" *United States v. Ambert*, 561 F.3d 1202, 1205 (11th Cir. 2009) (quoting *United States v. Howell,* 552 F.3d 709, 716 (8th Cir. 2009)).

[5]The ACNA became effective in 1996 and requires, among other provisions, that adults convicted of various sex offenses, regardless of the date of their conviction(s), to register with law enforcement officials prior to their release into society, *Ala. Code* § 15-20-22, and upon a change in their legal residence. *Ala. Code* § 15-20-23. The ACNA also places significant restrictions on where and with whom a registrant may live and work. *Ala. Code* § 15-20-26.

prison after his parole was revoked in March 2009[6] for failing to carry out the instructions of his parole officer in locating a suitable residence and not due to his separate conviction for a criminal violation of the ACNA (as charged by the Jefferson County Sheriff's Department) for which he was sentenced to a fifteen years imprisonment, received time served, and probation. (*See Doc. No. 5, Exh. A*.)

Plaintiff provides the following information in support of his complaint. He founded the Sexual Offender Survival group ["SOS"] at the Bullock Correctional Facility which began in June 2009 as an inmate-run support group for sex offenders and inmates with sexual addictions. The group apparently existed with the cooperation of the Bullock Correctional Facility's security and administrative staffs. (*Doc. No. 5, Exhs. B, F.*) In April 2010 Plaintiff had a meeting with Dr. King Adams regarding the SOS group, and he showed her a letter which reflected his and other inmate sex offenders' efforts at "dealing with issues that confront" them. (*Id. at Exh. B.*) During this meeting, Plaintiff sought permission to have copies of papers made for the SOS group and states such permission was granted. He subsequently received the requested copies from another inmate who worked in the Classification Office. Shortly thereafter, Plaintiff had his copywork confiscated and was subsequently summoned to Defendant Mason's office. Plaintiff was then escorted to Warden Sandra Giles's office where he was questioned about the

---

[6]Plaintiff entered a guilty plea in 1988 to robbery and rape. After serving approximately ten years of the twenty-five year sentence imposed for these offenses Plaintiff was paroled in 1998. (*Doc. No. 5, Exh. A*)

confiscated papers. He informed prison officials that the papers were made for the SOS group and that due to his indigency, correctional personnel had also made him copies of legal papers for use in one of his pending federal lawsuits. Following his explanation of how the copywork came into his possession, Plaintiff asserts that Defendant Mason openly belittled and humiliated him and called him a manipulator. This conduct, Plaintiff complains, caused him extreme humiliation, embarrassment, and concern for his institutional reputation among the administration. He further alleges that he fears Warden Mason may have placed negative and defaming opinions in his prison file which might hinder his efforts to be released on parole. Plaintiff contends that the conduct he endured has made him even more emotionally and mentally fragile from what he states he believes to have been abusive treatment. (*Doc. No. 5 at pgs. 4-6.*)

Plaintiff also alleges that his emotional and psychological well-being was adversely impacted when Defendant Mason subjected him to disciplinary action relating to an SOS group meeting. Specifically, on June 19, 2010 Plaintiff received a disciplinary notice for disobeying a direct order in violation of Rule #403. The circumstances for issuance of the disciplinary concerned Plaintiff's holding a SOS class on June 14, 2010 in Classroom 3 after Defendant Mason ordered him not to do so. At the June 24, 2011 disciplinary hearing, Dr. King Adams, whom Plaintiff requested as a witness, testified that Defendant Mason initially said inmates could conduct the sex offender classes but "down town called and said no sex offender classes" and Warden Mason told Plaintiff he could not hold class in

Classroom 3. Plaintiff's other witnesses at the hearing, Warden Giles and another correctional officer, also testified that Plaintiff had been told by Defendant Mason that he could not hold sexual offender classes in Classroom 3. At the conclusion of the proceedings, the hearing officer found Plaintiff guilty of failing to obey a direct order based on the arresting officer's sworn testimony that Plaintiff failed to obey a direct order that he not hold the SOS class in Classroom 3 and sanctioned him to a temporary loss of privileges and fifteen days in segregation. Warden Giles disapproved the disciplinary on June 25, 2010. (*See Doc. No. 5, Exh. H.*)

Plaintiff claims that he perceives Dr. Adam's reference to "downtown" to constitute the "Government officials listed as Defendants responsible for policies, procedures and programs in the criminal justice system . . . [and that his] mental well being is undermined by the conditions established by the policies, processes and procedures created and exercised by Defendants." (*Doc. No. 5 at pg. 4.*) He further contends that participation in the sex offender classes was his sole source of "emotional and mental gravity" but that his sincere efforts to recover from his "losses of liberty, family, society, rehabilitation and dignity" have been met with retaliation and punishment from Defendants as described herein and caused him daily mental anxiety and further aggravated conditions which undermine his mental health. (*Id. at pgs. 5, 7.*) Additionally, Plaintiff asserts that it is his "belief" that Defendants have failed to provide "constitutionally compliant mental health treatment as warranted by the sex offender act" as promulgated by Defendants and by which Plaintiff

was returned to prison. (*Id. at pg. 7.*)  Plaintiff maintains that "[i]n essence, [his] sex offender status is recognized as a mental health issue."  (*Id.*)

Based on the allegations contained in Plaintiff's July 28, 2011 amended complaint, the court deemed it necessary to direct Plaintiff to provide additional factual information in support of his  allegation that he is being denied mental health treatment and/or access to mental health treatment.  (*See Doc. No. 6.*)  In the amended complaint filed October 4, 2011 Plaintiff provides the following additional information:

• He was returned to prison solely due to homelessness and homelessness undermines mental health;

• Defendant Mason, who is over treatment at the Bullock Correctional Facility, subjected Plaintiff to disciplinary action for participating in a sexual offender self-help group which was previously approved by a psychologist and after another program for sex offenders (Anonymous Inmate Recovery Program - "AIR") was terminated; and

• There is no treatment program for sex offenders at the Bullock Correctional Facility and the prison does not have a grievance procedure for matters regarding treatment for sex offenders.

(*Doc. No. 11.*)

## II.  DISCUSSION

*A.  United States Attorney General Eric Holder, Jr.*

Plaintiff names United States Attorney General Eric Holder, Jr., as a defendant.

Plaintiff's claims against Defendant Holder in his official capacity should be dismissed on sovereign immunity grounds.  "[T]he United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475-76 (1994) (rejecting expansion of *Bivens*-type causes of actions directly against federal agency). The sovereign immunity that shields the Federal Government and its agencies from suit also extends to officers of the United States who act in their official capacities because such actions are essentially a suit against the United States.  *Id*. at 485-86.

Plaintiff also sues Defendant Holder in his individual capacity. He maintains that Attorney General Holder has "failed to enforce state and territorial compliance with SORNA requirements against the [S]tate of Alabama by mandating treatment for SORNA violators within Alabama who are returned to prison" due to homelessness.[7] (*Doc. No. 5 at pg. 4*.)   To the extent Plaintiff sues Defendant Holder in his  supervisory capacity, a *Bivens* action will not support a claim under a theory of *respondeat  superior*.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009); *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994). In *Iqbal*, the Court  clarified  that a government official sued

---

[7]As noted, Plaintiff claims that he is "a successful parolee [who] was returned to prison for violating the Alabama Community Notification Act ["the Act"] as a result of his failure to comply with the Act's residency restrictions as applied to convicted sex offenders. Plaintiff was returned to prison for violating the terms of his probation. (*Doc. No. 5, Exh. A*.)  Although Plaintiff makes repeated references to SORNA, there is no indication that he has been found in violation of any provisions contained therein.

in his/her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a *respondeat superior* theory or on the basis of some general connection to allegedly responsible individuals or actions. *Id.* at 1948-49 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* .... [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution .... [P]urpose rather than knowledge is required to impose [constitutional] liability on ... an official charged with violations arising from his or her superintendent responsibilities"); *see also Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir. 1990) (explaining that a supervisor "can be held liable under [ *Bivens* ] when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate") (citations and footnote omitted).

Here, the court finds it clear that Plaintiff's claim against Defendant Holder is premised on no more than this Defendant's role as the Attorney General for the United States. There is no indication much less allegation by Plaintiff of any facts showing purposeful personal involvement by this Defendant. Thus, Plaintiff has not shown how this Defendant violated his constitutional rights and has stated no *Bivens* claim against him. Therefore, his allegations against U.S. Attorney General Holder are subject to dismissal. *See Iqbal,* 129 S.Ct. at 1948-49. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

### B. *Defendants Riley, King, Allen, Murphey, and Mason*

#### i. *Official Capacity Claims*

Plaintiff files suit against Defendants Riley, King, Allen, Murphey, and Mason in both their official and individual capacities. Specifically, Plaintiff alleges that the above-named defendants "failed to promulgate rules and procedures for administering, implementing and enforcing mental health treatment for him as a sex offender returned to custody of the Alabama Department of Corrections for violations of civil and regulatory statutes." (*Doc. No. 5 at pg. 4.*)   As state officials, Defendants are absolutely immune from suit for damages in their official capacities. *See Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). "A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable." *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir. 1995).

#### ii. *Individual Capacity Claims*

Plaintiff also sues Defendants Riley, King, Allen, Murphey, and Mason in their individual capacities. With respect to Defendants Riley, King, Allen, and Murphey, Plaintiff alleges that these individuals denied him equal protection and acted with deliberate indifference  to his mental health by denying him adequate mental health treatment where they "failed to promulgate rules and procedures for administering, implementing and

enforcing mental health treatment" for sex offenders.  (*Doc. No. 1 at pg. 4*.)   As explained, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citations omitted). "The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1361 (11th Cir. 2003). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269 (internal quotation marks and citations omitted).

Here, Plaintiff's broad and conclusory allegations against Defendants Riley, King, Allen, and Murphey are due to be dismissed because Plaintiff has not alleged that these defendants participated in or directed any of the misconduct about which he complains. Without such personal involvement, these defendants may not be held liable. *See Iqbal*, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to [§ 1983] ... suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  That is, Plaintiff does not allege that Defendants Riley, King, Allen, or Murphey personally participated in any of the alleged constitutional violations. Additionally, it is clear that these defendants are not involved in the daily operation of the Bullock Correctional Facility or any other state correctional

facility. Moreover, Plaintiff fails to present any facts which indicate a causal relationship between an action undertaken or policy enacted by Defendants Riley, King, Allen, or Murphey and the alleged constitutional deprivations. A supervisory official "may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.' *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)." *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006). Consequently, the claims lodged against Defendants Riley, King, Allen, and Murphey in their individual capacities lack an arguable basis in law and they are, therefore, due to be summarily dismissed pursuant to the directives of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke*, 490 U.S. at 327.

      *iii.  Warden Mason*

      Plaintiff claims that Defendant Mason caused disciplinary proceedings to be initiated against him in June 2010 for disobeying a direct order regarding where the SOS group could convene for a meeting. Plaintiff states  that he believed he had permission to have the SOS group meeting after hours and in Classroom 3 and, therefore, claims that Defendant Mason's conduct in causing the disciplinary to be issued against him amounted to malicious prosecution, a deprivation of rehabilitation, and a violation of his right to equal protection. Plaintiff also appears to present several alternative theories against Defendant Mason with respect to his claim alleging a deprivation of adequate mental health treatment based on a lack of rehabilitation programs for  sex offenders which Plaintiff claims is undermining his

mental health. (*Doc. No. 5 at pg. 4.*)

### a. Rehabilitation Programs

To the extent Plaintiff alleges that he has a liberty interest in participating in a sex offender treatment program because such treatment is necessary due to his classification as a sex offender, he is entitled to no relief. There is no provision in the ACNA which mandates that incarcerated sex offenders receive mental health treatment while incarcerated. *See Ala. Code* 1975 § 15-20-20, *et seq.* (1975, as amended). Furthermore, Plaintiff does not have a federally cognizable liberty interest in participating in rehabilitative programs while incarcerated. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff does not have a liberty interest in participating in rehabilitative programs, his due process claim against Defendant Mason, without more, entitles him to no relief.

### b.  False Disciplinary

Plaintiff maintains  that Defendant Mason "maliciously prosecuted" him when she caused him to be issued  the June 2010 disciplinary infraction.  The basis for this claim appears to be Plaintiff's belief that the disciplinary charges were unfounded because he did not commit a prison infraction where had received prior approval from the head psychologist at Bullock Correctional Facility to hold the SOS classes and because there were no other sex offender treatment classes offered at the institution at that time.  (*Doc. No. 5 at pg. 4.*)  With respect to this claim, the court understands Plaintiff to essentially claim that Defendant Mason violated his due process rights by causing a false disciplinary to be issued against him.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  Thus, due process is required only if a person is deprived of an interest protected by the Due Process Clause.  The Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472 (1995), makes clear that due process is implicated only when the actions taken against an inmate represent a "dramatic departure" from the ordinary conditions of incarceration.  *Id*. at 485.  Where the loss suffered by Plaintiff amounts to a grievous loss of a substantive interest, the protection of the Due Process Clause is invoked. *Id*. 485-86.  Such losses normally consist of deprivations which impact the duration of confinement. *Id*.

13

Here, the documents filed in support of the complaint reflect that although Plaintiff was found guilty of the infraction charged and sanctioned to a temporary loss of privileges and fifteen days in segregation, Warden Giles ultimately disapproved the disciplinary. (*Doc. No. 5, Exh. H*.) Plaintiff, therefore, was not subject to either the fact of the disciplinary or the recommended punishment,  none of which, at any rate, would have impinged on the duration of his confinement.

To the extent   Plaintiff may be heard to claim that Defendant Mason caused him to be subjected to  disciplinary action in retaliation for his involvement with the SOS group, based on the evidentiary material filed in support of the complaint,  the court find this claim entitles Plaintiff to no relief. Prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right. *See Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir. 2003) *Adams v. James,* 784 F.2d 1077, 1079-80 (11th  Cir.1986); *Bridges v. Russell,* 757 F.2d 1155 (11th  Cir.1985). To establish a claim for retaliation, the inmate must show a causal connection between  protected conduct and the harm complained of. *Farrow,* 320 F.3d at 1248-49.  Broad, conclusory allegations of retaliation, however,  are insufficient to state a claim under § 1983. *See Iqbal*, 129, S.Ct. 1949;  *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) ("In civil rights actions, ... a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").  Further, an inmate cannot state a claim for retaliatory disciplinary proceedings where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *See O'Bryant v. Finch,*

14

637 F.3d 1207, 1215 (11th Cir. 2011) ("a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction."); *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990) (*per curiam*) ( An inmate cannot state a claim for retaliatory disciplinary proceedings where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." ); *Romansky v. Stickman,* 147 Fed. Appx. 310, 2005 WL 2271154 (3rd Cir. 2005) (where a prisoner is found guilty of a disciplinary infraction, he does not state a claim for retaliation in its writing); *Henderson v. Baird,* 29 F.3d 464, 465, 469 (8th Cir. 1994) (assault charge and conviction found not to be retaliatory; a finding that a prisoner violated the rules "checkmates" his retaliation claim).

Here, despite Plaintiff's reliance on conclusory allegations that Defendant Mason's conduct had a retaliatory motive, his complaint and the evidence submitted in support thereof reflect that he received due process during the disciplinary proceedings and there was some evidence to support the determination reached by the hearing officer. *See Wolff v. McDonnell,* 418 U.S. 539 (1974) and *Superintendent v. Hill,* 472 U.S. 445 (1985). Even though the disciplinary was ultimately not approved and Plaintiff was, therefore, relieved of the consequences of the infraction, his claim of retaliation, nonetheless, fails under the facts and evidence presented. *See O'Bryant*, 637 F.3d at 1215.

c. *Equal Protection*

Plaintiff also claims that Defendant Mason's conduct in causing him to be subjected

to disciplinary action for violating Rule #403 denied him equal protection. Plaintiff fails, however, to provide any facts in support of this claim. That is, he does not allege that another inmate receivable more favorable treatment, that this inmate is similarly situated to him, and that he was invidiously discriminated against on account of some protected constitutional interest. In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest." *Jones v. Ray,* 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Florida Pardons & Parole Comm'n,* 785 F.2d 929, 932-33 (11th Cir. 1986) ( *per curiam* )). Thus, the absence of relevant allegations precludes the court from finding a plausible equal protection claim. *Iqbal,,* 129 S.Ct. at 1949. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted. *See Fullman,* 739 F.2d at 556-57.

### d. Verbal Abuse

Plaintiff alleges that when he was taken to Warden Giles's office to be questioned about his confiscated copywork, Defendant Mason subjected him to verbal abuse by referring to him as a manipulator and stating that all sex offenders are manipulators. Plaintiff claims that Defendant Mason's comments caused him extreme humiliation, embarrassment, and concern for his institutional reputation. (*Doc. No. 5 at pg. 6*.)

An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or

laws of the United States. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981). The statements about which Plaintiff complains, standing alone, do not violate the Constitution. *Cf. Paul v. Davis*, 424 U.S. 693 (1976). Threatening, derogatory, profane or abusive comments made by correctional officers to an inmate do not rise to the level of a constitutional violation. *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional rights); *McFadden v. Lucas*, 713 F.2d 143; 147 (5th Cir. 1983) (threatening demeanor of officers undertaken "to enforce reasonable security needs are not violative of a prisoner's constitutional rights."); *see also Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973); *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone ... 'no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (citation omitted).   Thus, the comments about which Plaintiff complains fail to demonstrate a deprivation of any protected right, privilege or immunity under the Constitution and this claim is  due to be dismissed as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i). Additionally, Plaintiff's assertion that he suffered humiliation and concern for his institutional reputation entitles him to no relief in this § 1983 action.  Injury to reputation, without more, is not a liberty interest protected under the Fourteenth Amendment to the United States Constitution. *Paul v. Davis,* 424 U.S. 693; *Siegert v. Gilley,* 500 U.S. 226

(1991).

e. *Mental Health Treatment*

Plaintiff maintains that he has been denied adequate mental health treatment based on a failure of the Bullock Correctional Facility to provide a sex offender treatment program for convicted sex offenders. The court requested Plaintiff to expound on this allegation by providing facts in support of his claim of constitutionally inadequate and/or non-compliant mental health treatment and the steps he has undertaken with regard to seeking mental health treatment. Other than asserting that his sex offender status is a recognized mental health issue, Plaintiff makes only conclusory allegations that the current conditions of his confinement are depriving him of basic mental health needs. Thus, while Plaintiff essentially couches his claim regarding a failure of the Bullock Correctional Facility to provide inmates convicted of sex offenses with a sex offender treatment program as a failure of the facility to provide mental health treatment, he does not allege specific facts of deliberate indifference to serious medical needs. Specifically, and relevant here, Plaintiff has not alleged that Defendant Mason (or any other relevant correctional or medical personnel) has acted with subjective deliberate indifference to his mental health needs, that is, that she is aware of a substantial risk of serious harm to Plaintiff in this regard but has disregarded that risk. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health

18

or safety[.]").

Plaintiff's complaint is devoid of any allegation much less indication that he has sought mental health treatment, as opposed to a specific rehabilitation program, at the Bullock Correctional Facility and that such efforts have been ignored or denied. As explained, prisoners have no general constitutional right to participate in a specific rehabilitation program, *Moody,* 429 U.S. at 88 n. 9*; Stewart v. Winter,* 669 F.2d 328, 336 n. 19 (5th Cir. 1982) ("[F]ailure to provide a rehabilitation ... does not, by itself, constitute cruel and unusual punishment."), and  the ACNA does not contain language requiring convicted sex offenders to participate in sex offender treatment programs, thus, even assuming that Plaintiff was returned to prison under those provisions, he has not stated a constitutional violation in this regard.  Accordingly, under the circumstances alleged, Plaintiff's claim of a denial of adequate mental health treatment based on a failure of the prison facility to offer a sex offender treatment program while convicted inmate sex offenders serve their sentences is due to be summarily dismissed for its failure to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaint be DISMISSED  with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i-ii) and prior to service of process.

It is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 28, 2011**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th  Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 14th day of November 2011.


 /s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE